IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTOINE LACY, R16688,<br><br>Petitioner,<br><br>v.<br><br>TERI KENNEDY, Warden,<br><br>Respondent. | Case No. 18 cv 04603<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Antoine Lacy has filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his conviction for murder. In his petition, he claims that the trial court improperly considered an element inherent in the offense as an aggravating factor at sentencing. (Dkt. 1 at 5) For the reasons that follow, Lacy's petition [1] is denied, and no certificate of appealability shall issue.

## BACKGROUND

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Lacy has not provided clear and convincing evidence to rebut the presumption of correctness here, so this factual background is taken from the state court's findings. *People v. Lacy*, 2017 IL App (1st) 152917-U.[1]

---

[1] The last state court to address Lacy's case on the merits is the post-conviction appellate court in *People v. Lacy*, 2017 IL App (1st) 152917-U. However, Lacy did not raise the instant claim in his post-

1

**1. Trial**

Following a jury trial, Petitioner Antoine Lacy was found guilty of first-degree murder of ten-year-old Nequiel Fowler and was sentenced to 60 years imprisonment. As testified by co-defendant Joseph Chico at trial, Chico himself, Lacy, and co-defendant Luis Pena were members of the Latin Dragons, a gang that claimed the area of 87th Street and Escanaba Avenue as their territory. *People v. Lacy*, 2017 IL App (1st) 152917-U, at ¶ 5. Another co-defendant, Raymond Jones, was not a member of Latin Dragons but lived near 87th Street and would hang out with the Latin Dragons. *Id*. Chico testified that the Latin Dragons were rivals with another gang called the Latin Kings, which claimed control of an area a block away at 87th Street and Exchange Avenue. *Id*. The two gangs were hostile to the point that Latin Dragons would kill Latin Kings on sight. *Id*.

Chico further testified that on the morning of September 1, 2008, he drove Pena and Lacy to 87th Street and Escanaba for "mandatory Monday." *People v. Lacy*, 2017 IL App (1st) 152917-U, at ¶ 6. As explained by Chico, mandatory Monday was a day when Latin Dragons would go out in the neighborhood to "show their strength." *Id*. During the drive, Lacy called another member of Latin Dragons to obtain a gun, and then told Chico and Pena that Jones had one. *Id*. The group arrived at the 87th Street and Escanaba Avenue around 2 or 3 p.m. Lacy drove away, leaving the group behind, and later called Chico to report that he saw three members of the Latin Kings

---

conviction petition, so that court did not address the merits of Lacy's sentence-enhancement claim. The last state court to address the sentence-enhancement claim was *People v. Lacy*, 2014 IL App (1st) 120655-U. As the factual backgrounds are strikingly similar, the Court uses the facts from the post-conviction appellate court.

while driving past Exchange Avenue. *Id*. One minute later, Lacy met Chico in person and indicated that Pena and Jones were in the gangway by Jones's house with a gun. The two then walked together to the gangway to meet with Pena and Jones. At the gangway, Lacy told Pena to "go fire the Kings up that they're out there." *Id*. at ¶ 7. A few minutes later, Lacy and Chico walked back through the gangway to return to Chico's car, leaving Pena and Jones in Jones's backyard. *Id*. At that time, Pena was wearing a royal blue shirt. Chico testified that as he and Lacy were walking out of the gangway toward his car, he heard five gunshots coming from the alley between Exchange Avenue and Escanaba Avenue. *Id*. The two got into Chico's car and Lacy told Chico to wait for Pena. Chico pulled over at the corner onto 87th Street. Pena emerged from a nearby alley two or three minutes later, wearing a white t-shirt. *Id*. After Pena got into the car, Chico drove the group to Lacy's house. *Id*.

The evidence at trial established that ten-year-old Fowler was playing outside near 87th Street and Exchange Avenue on September 1, 2008. *Lacy*, 2017 IL App (1st) 152917-U, at ¶ 4. At around 4:30 p.m., a man in the gangway between Exchange Avenue and Escanaba Avenue yelled "King killer" and shots were fired. *Id*. After the shooting stopped, Fowler was found on the ground. Medical examination showed that Fowler's cause of death was a gunshot wound to the chest. *Id*.

While searching Jones's house, the police found a gun and a blue t-shirt. *Lacy*, 2017 IL App (1st) 152917-U, at ¶ 12. A forensic investigator recovered two bullets and four cartridge cases from the scene. The two bullets and four cartridges recovered from the scene and the bullet recovered from Fowler's body were all determined to

3

have been fired from the gun found in Jones's house. *Id.* at ¶ 13. Gunshot residue was found on the interior and exterior of the blue t-shirt found in Jones's house. *Id.*

Chico pled guilty to conspiracy to commit murder in exchange for his testimony against Lacy, Pena, and Jones. *Lacy,* 2017 IL App (1st) 152917-U, at ¶ 8. Lacy, Pena, and Jones were tried simultaneously before three separate juries. *Id.* at ¶ 3. In Lacy's case, the jury found him guilty of first-degree murder. Lacy moved for a new trial. The trial court denied the motion for a new trial, subsequently sentenced Lacy to 60 years in prison, and denied his motion to reconsider his sentence. *Id.* at ¶ 14.

**2. Direct Appeal**

On direct appeal, Lacy argued that the trial court erred by considering an element inherent in the underlying offense as an aggravating factor at sentencing. *People v. Lacy*, 2014 IL App (1st) 120655-U. Specifically, the trial court determined that Lacy "caus[ed] or threaten[ed] serious harm" during the commission of the murder. *Id.* at ¶ 9. Lacy argued that the caused-serious-harm factor was inapplicable because it was "inherent to the offense" of murder. (Dkt. 8, Ex. A, 18). In making this argument, Lacy pointed to the trial judge's following remarks:

> Aggravation. Did the defendant's conduct cause or threaten serious harm? Normally that would be inherent in the nature of the charge, but the evidence actually did point out that the defendant was more than encourager and orderer of the conduct which resulted in the death of the victim.* * * There is kind of a causation factor here where maybe but for the defendant's conduct, the ultimate acts would not have happened.

(*Id.* at 17). The trial court found that the aggravating factors applied.

The Appellate Court of Illinois upheld the trial court's sentencing decision. *People v. Lacy*, 2014 IL App (1st) 120655-U. As that court explained, the trial court

4

did not treat Fowler's death as an aggravating factor on its own but found an aggravating factor in Lacy's active encouragement and enabling of the fatal shooting, among many other things. *Id.* at ¶ 13. Further, the appellate court held it was not improper for the trial court to give controlling weight to the severity of the offense when considering Lacy's sentence. *Id.*

Lacy then filed a petition for rehearing to the Illinois Appellate Court, arguing that the court failed to address his argument that the trial judge improperly considered an element inherent in the offense as an aggravating factor in sentencing. The court denied the petition. (Dkt. 8, Ex. F).

Lacy filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois on the same ground on which he based his direct appeal and petition for rehearing. The Illinois Supreme Court denied the PLA. (Dkt. 8, Ex. H).

### 3. Post-Conviction

Lacy eventually filed a post-conviction petition, which was summarily dismissed by the Circuit Court of Cook County. Lacy appealed the summary dismissal to the Appellate Court of Illinois, arguing that the lower court failed to consider an affidavit from co-defendant Jones, which raised a claim of actual innocence for Lacy. *People v. Lacy*, 2017 IL App (1st) 152917-U. In his affidavit, Jones averred, among other things, that Lacy had nothing to do with the murder of Fowler, that he lied about Lacy giving orders to shoot any members of the Latin Kings, that he lied about Lacy being in his backyard on September 1, 2008, and that he was outside on that day together with Lacy doing nothing. *Id.* at ¶ 17. The appellate court dismissed the

5

petition. The court found key aspects of the affidavit contradicted by the evidence presented at trial and that the affidavit, even assumed to be true, could not exonerate Lacy because he was convicted under an accountability theory. *Id.* at ¶ 25. It thus determined that Jones's affidavit, considered along with the trial evidence, was not conclusive to the extent that it would probably lead to a different result on retrial. As a result, the court dismissed the petition.

Lacy then filed a post-conviction PLA with the Illinois Supreme Court, making the same argument about Jones's affidavit. The Supreme Court of Illinois denied the PLA. (Dkt. 8, Ex. N).[2] This habeas petition followed.

## **LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks omitted). To properly exhaust a claim, a petitioner must fully and fairly present federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

If a petitioner has failed to properly assert his federal constitutional claims at each level of state review, then his claims are procedurally defaulted. *Woods v.*

---

[2] Lacy indicated in his petition to this Court that he has also filed a successive post-conviction petition in state court, which is still pending. However, documents related to that petition are not in the record.

6

*Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). But a habeas petitioner may overcome procedural default by establishing: 1) cause for the default and actual prejudice, or 2) the failure to consider the claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006); *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). A fundamental miscarriage of justice occurs when a habeas petitioner demonstrates that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *see also Thomas*, 822 F.3d at 386. Thus, procedural default, although otherwise an absolute prerequisite to federal habeas review, may be excused in certain circumstances.

If a habeas petitioner successfully runs the procedural-default gauntlet, then a federal court may consider the merits of his federal habeas claims. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). But just because a federal court independently concludes that the relevant state court decision applied clearly established law erroneously does not mean that the court may grant the writ; rather, the state court's application must be

7

objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155 L. Ed. 24 144 (2003).

## ANALYSIS

### A. Procedural Default

Lacy's only claim is that the state trial court, by aggravating his sentence based on consideration of an element inherent in the offense, violated his right to due process. (Dkt. 1, 5). This claim is procedurally defaulted.

Before petitioning for habeas corpus in a federal court, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), in order to give the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citation omitted). To provide the state with the opportunity, the prisoner must "fairly present" his federal claim at all levels of state court review to alert those courts to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66. To fairly present the federal claim, the prisoner must, in concrete, practical terms, give state courts notice of the "federal constitutional nature of the issue to permit [them] to resolve that issue on a federal basis." *Hoglund v. Neal*, 959 F.3d 819, 833 (7th Cir. 2020) (citation omitted).

Lacy's claim is procedurally defaulted. Lacy raised this claim in his direct appeal, petition for rehearing, and subsequent PLA, but not in his post-conviction petitions and post-conviction PLA. More importantly, in making this argument to the state courts, Lacy relied solely on Illinois state law, without explicitly stating or otherwise indicating that the state trial court's sentencing practice violated his

8

federal constitutional rights. As a result, Lacy failed to fairly present the federal nature of the claim to Illinois state courts. Accordingly, his claim is procedurally defaulted.

Procedural default may be overcome if the petitioner establishes: 1) cause for the default and actual prejudice, or 2) the failure to consider the claim would result in a fundamental miscarriage of justice. *House*, 547 U.S. at 536; *Thomas*, 822 F.3d at 384. Lacy has established neither here. Therefore, this Court is precluded from reviewing the habeas petition. *Mulero*, 668 F.3d at 536.

**B. Non-Cognizable Claim**

Even assuming Lacy's claim is not procedurally defaulted, it fails to bring a cognizable federal claim. Lacy's claim—that the state court's sentencing enhancement is unconstitutional because the court considered an element inherent in the offense as an aggravating factor—is essentially a double enhancement claim. *United States ex rel. Alcozer v. Pfister*, No. 11 C 7612, 2014 WL 4947672, at *4 (N.D. Ill. Oct. 1, 2014) (habeas petitioner's claim that the state court considered an element inherent in an offense at sentencing is a double enhancement claim). Double enhancement claims have been consistently rejected as grounds for federal habeas relief. *Pfister*, 2014 WL 4947672, at *4 (denying the petition because a double enhancement claim is "not a cognizable federal constitutional claim"); *United States ex rel. Carter v. Gaetz*, No. 10 C 3857, 2011 WL 759997, at *4 (N.D. Ill. Feb. 24, 2011) (double enhancement is non-cognizable on habeas review because it does not relate to federal constitutional issues); *United States ex rel. Kelley v. Haws*, No. 98 C 4707,

2001 WL 300306, at *2 (N.D.Ill.2001) (double enhancement claims based on state sentencing statutes are "beyond the scope of what this Court is permitted to address in a [habeas] action" and are therefore noncognizable) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")). This Court is, therefore, unable to review this claim under § 2254.

Further, even if this claim were cognizable, it is meritless. The Illinois Appellate Court disposed of Lacy's double enhancement argument by finding that the trial court "did not make Fowler's death an aggravating factor on its own; rather, the court found an aggravating factor in defendant's active encouragement and enabling of the fatal shooting, among other things." *Lacy*, 2014 IL App (1st) 120655-U ¶ 13. Thus, the aggravating factor did not stem from an element inherent in the offense (threatening serious harm or Fowler's death), but from Lacy's encouragement of the others. This is not an unreasonable determination. Accordingly, Lacy's claim fails.

## C. Certificate of Appealability

If Lacy wishes to appeal this denial, he must first obtain a certificate of appealability. Under 28 U.S.C.§ 2253, a certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.

Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citations omitted). For the reasons discussed above, Lacy has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should have been resolved differently, nor would they determine that Lacy deserves encouragement to proceed further on his habeas claims. The Court declines to issue a certificate of appealability.

## **CONCLUSION**

For the reasons discussed above, Lacy's habeas petition (Dkt. 1) is denied, and the Court declines to issue a certificate of appealability. The Clerk is instructed to enter judgment in favor of Respondent and against Petitioner.

E N T E R:

Dated: July 17, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge